IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| WILLIAM O.,[1]   )<br>   )<br>   *Plaintiff*,   )<br>   )<br>   v.   )<br>   )<br>KILOLO KIJAKAZI,   )<br>Acting Commissioner of the   )<br>Social Security Administration,   )<br>   )<br>   *Defendant*.   )<br>———————————————   ) | Case No. 3:23-cv-210-HEH-SLS |

## REPORT AND RECOMMENDATION

This matter comes before the Court for a Report and Recommendation under 28 U.S.C. §

636(b)(1)(B) on cross-motions for summary judgment, which render the matter ripe for review.

(ECF Nos. 8, 11.)  Plaintiff William O. seeks review of the Commissioner ("Commissioner") of

the Social Security Administration's ("SSA") decision to deny Plaintiff's Title II application for

disability insurance benefits.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de*

*novo* hearing and new decision.  (Plaintiff's Brief in Support of a Motion for Summary Judgment

(ECF No. 9) ("Pl.'s Mem.") at 21.)   As the basis for such relief, Plaintiff argues that the

Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence because

he improperly evaluated the medical opinions of Kira Bleecher, M.D. ("Dr. Bleecher"); Jessica

Bardenheier, LPC ("Counselor Bardenheier"); Vicki Johnson, Psy.D. ("Dr. Johnson"); Richard

Luck, M.D. ("Dr. Luck"); Howard Leizer, Ph.D. ("Dr. Leizer"); and Catherine Blusiewicz, Ph.D.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

("Dr. Blusiewicz") pertaining to his mental residual capacity.  (Pl.'s Mem. at 12-21.)   In response, Defendant argues that the ALJ properly considered and analyzed the opinions in accordance with the regulations.  (Defendant's Motion for Summary Judgment and Brief in Support (ECF No. 11) ("Def.'s Mem.") at 15-20.)  The Court finds that the ALJ complied with applicable regulations in weighing the opinion evidence and that substantial evidence supports the ALJ's residual functional capacity findings.

Therefore, for the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 8) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 11) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on June 29, 2021, alleging disability beginning October 1, 2019.  (Administrative Record ("R.") at 107, 179, 192.)[2]  In his application, Plaintiff alleged that he suffers from autosomal dominant polycystic kidney disease, bulging disc/chronic back pain, anxiety/panic disorder, depression, "chronic substance disorder on MAT therapy," and insomnia.  (R. at 192.)  The SSA denied Plaintiff's claims initially and again upon reconsideration.  (R. at 129, 139.)  Plaintiff requested a hearing before an ALJ, and a hearing was held on November 17, 2022.  (R. at 145, 37-66.)

On December 12, 2022, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Social Security Act ("the Act").  (R. at 18-32.)  On February 14, 2023, the

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-7.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423 (d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity ("RFC"), which accounts for the most that the claimant can do despite his impairments. *Id.* § 404.1545(a).

At step four, the ALJ must assess whether the claimant can perform his past employment given his residual functional capacity.  *Id.* § 404.1520(a)(4)(iv).  The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his limitations preclude him from performing his past relevant work.  *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  If such past work can be performed, then benefits will not be awarded, and the analysis ends.  *See* 20 C.F.R § 404.1520(e).  However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy.  *See id.* § 404.1520(a)(4)(v).  The Commissioner usually offers this evidence through the testimony of a vocational expert.  *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion.  *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process. (R. at 18-32.) *See* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634 (describing the ALJ's five-step sequential evaluation). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 1, 2019 (the alleged onset date). (R. at 21.) At step two, the ALJ determined Plaintiff suffered from the following severe impairments: autosomal dominant polycystic kidney disease, chronic kidney failure, hypertension, degenerative disc disease of the lumbar spine, generalized anxiety disorder, panic disorder, attention deficit hyperactivity disorder ("ADHD"),[3] posttraumatic stress disorder ("PTSD"), cannabis use disorder, and opioid use disorder. (R. at 21.)

---

[3] The Court notes that the ALJ identifies the abbreviation of attention deficit hyperactivity disorder as PTSD. (R. at 21.) The Court assumes this is a clerical error.

At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 21-23.)  In considering the severity of Plaintiff's mental impairments, the ALJ found moderate limitations in (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself.  (R. at 22-23.)

The ALJ supported his findings by noting the following.  While Plaintiff complained of memory and understanding problems, providers only rarely described mild memory deficits on examinations and "[m]ore often, th[o]se are not present."  (R. at 22.)  Moreover, Plaintiff "is able to prepare simple meals, ride a motorcycle, handle his own medical care, and watch and understand television shows," all activities which "require him to learn, recall, and use information."  (R. at 22.)  Plaintiff did "not allege substantial difficulty getting along with others," but "stated that he is uncomfortable in social situations and rarely engages in social activities."  (R. at 22.)  Examinations often revealed disturbances in Plaintiff's mood and affect but did not document specific difficulties interacting with Plaintiff.  (R. at 22.)  Examinations also showed that Plaintiff spoke to his friends and family regularly and "ha[d] recently participate[d] in group biker events, visited an amusement park, and attended a music festival all without substantial difficulty," activities which required Plaintiff to demonstrate appropriate social skills.  (R. at 22.)  While Plaintiff testified he had trouble sustaining attention and concentration for lengthy periods, providers did not typically observe these difficulties.  (R. at 22.)  Moreover, Plaintiff's ability to "prepare simple meals, ride a motorcycle, watch and follow television shows, and handle his own medical care" showed that he was able "to maintain some degree of concentration, persist at tasks, and complete those tasks in a timely fashion."  (R. at

23.)  Finally, while Plaintiff stated he was not always motivated to care for his personal needs, providers did not document abnormalities in Plaintiff's grooming or hygiene, and Plaintiff "ha[d] not displayed specific difficulties tolerating changes or managing his psychological symptoms." (R. at 23.)

The ALJ then determined Plaintiff's RFC.  (R. at 23-30.)  Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform a range of light work as defined in 20 CFR § 404.1567(b) with the following limitations:

> [Plaintiff] can frequently balance, stoop, kneel, crouch, or crawl.  [Plaintiff] can occasionally climb ramps and stairs, but [Plaintiff] cannot climb ladders, ropes, or scaffolds.  [Plaintiff] can tolerate occasional exposure to vibrations, but no exposure to unprotected heights or moving mechanical parts.  [Plaintiff] can concentrate in the workplace for periods of two hours before requiring a break.  [Plaintiff] is limited to performing simple, routine tasks.  [Plaintiff] can occasionally interact with supervisors and coworkers, but [Plaintiff] cannot interact with the public.  [Plaintiff] can frequently appropriately [sic] to changes in a routine work setting.  [Plaintiff] cannot perform work requiring a specific production rate, such as assembly line work, or work that requires hourly quotas. [Plaintiff] can work in proximity to coworkers where interaction is not required to complete tasks.

(R. at 23-24.)

The ALJ explained that he determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."  (R. at 24.)  Specifically, the ALJ noted that Plaintiff has been diagnosed with impairments that "prevent him from performing complex, fast-paced work activities, and further affect his capacity to interact with others and tolerate changes" and has received treatment for these problems.  (R. at 25.)  The ALJ cited examination records that revealed disturbances in Plaintiff's mood and affect, but also noted that his attention, concentration, and memory remained intact.  (R. at 25.)  Plaintiff claimed he struggles with following spoken instructions,

participating in social situations, and falling asleep, and also suffers from frequent panic attacks. (R. at 26.) But other than disturbances in his mood and affect and insight or judgment and rare occasions of diminished attention, concentration, memory, fidgetiness, or rapid speech, the ALJ found that "evaluations are normal, and clinicians do not describe difficulty interacting with [Plaintiff] or note that he appears fatigued during appointments."  (R. at 26.)  The ALJ further acknowledged that Plaintiff has suggested his symptoms have improved and that his anxiety has diminished with sobriety.  (R. at 26.)  He "rarely has panic attacks and … is able to navigate social situations, like music festivals and amusement parks, without substantial difficulty."  (R. at 26.)

The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c."  (R. at 24.)   Here, Plaintiff challenges the ALJ's weighing of various medical opinions with respect to his mental impairments as error.  Therefore, the Court details the ALJ's consideration of those medical opinions below in the analysis section.  After considering the various medical opinions, the ALJ then determined Plaintiff's vocational factors.  He found that Plaintiff had no past relevant work, met the definition of a younger individual, and had at least a high school education.  (R. at 30.)

At step five, the ALJ concluded that there were jobs in significant national numbers that Plaintiff could perform given his limitations.  (R. at 30-31.)  The ALJ adopted the Vocational Expert's testimony that Plaintiff could perform the jobs of bagger, hand packer, and laundry folder.  (R. at 31.)

## IV.    ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's

8

findings are supported by substantial evidence. *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340). "In reviewing for substantial evidence, [a court must not] undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Hancock*, 667 F.3d at 472; *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

For the reasons that follow, this Court finds that the ALJ properly assessed the medical opinion evidence in accordance with the regulations and that substantial evidence supports the ALJ's mental RFC determination.

**A. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017**

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework. This framework applies in Plaintiff's case. (Pl.'s Mem. at 13.) *See also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The revised regulations provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources, no matter the source. 20 C.F.R. § 404.1520c(a)-(b).

Under the regulations, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. § 404.1520c. Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* § 404.1520c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. *Id.* § 404.1520c(b)(2).

## B. The ALJ Applied Correct Legal Standards in Evaluating Dr. Bleecher's Opinion and the ALJ's Determinations Are Substantially Supported by the Evidence

### 1. Dr. Bleecher's Medical Opinion

Dr. Bleecher, one of Plaintiff's treatment providers, completed a mental capacity questionnaire on August 31, 2022. (R. at 633-35.) Therein, Dr. Bleecher listed Plaintiff's diagnoses as opioid use disorder (severe, in remission), ADHD, PTSD, and generalized anxiety disorder. (R. at 633.) Dr. Bleecher opined that Plaintiff had marked limitations in the ability to follow one- or two-step oral instructions to carry out a task and the ability to sequence multi-step activities. (R. at 633.) Dr. Bleecher noted Plaintiff's "difficulty remembering instructions – asks

10

several times for repeat instructions with medication changes, [and] forgetful[ness] – writes things down and loses paper" as support for these conclusions. (R. at 633.) Dr. Bleecher also opined that Plaintiff had marked limitations in the following skills: the ability to initiate and perform a task that he knows how to do, the ability to ignore or avoid distractions while working, the ability to sustain an ordinary routine and attend work regularly, and the ability to work a full day without needing more than the allotted number and length of breaks during the day. (R. at 634.) Dr. Bleecher cited "interrupts during appointments, sig hyperactivity, easily distracted" as findings that support these conclusions. (R. at 634.) Lastly, Dr. Bleecher noted that Plaintiff had marked limitations in the ability to adapt to changes and make plans independently of others. (R. at 634.) Dr. Bleecher opined that Plaintiff had an extremely restricted ability to manage psychologically-based symptoms. (R. at 634.) She explained that Plaintiff has "difficulty making and implementing decisions, [and] uses avoidance to deal with anxiety/panic attacks" as support for these conclusions. (R. at 634.)

2.    *The ALJ's Evaluation of Dr. Bleecher's Opinion*

The ALJ satisfied the regulations when he found Dr. Bleecher's opinion not persuasive. The ALJ's decision first summarized Dr. Bleecher's findings. (R. at 29.) The ALJ then noted the inconsistencies between Dr. Bleecher's opinion and other medical evidence on file, including Dr. Bleecher's own treatment notes. (R. at 633.) The ALJ explained that:

> [Dr. Bleecher's] opinion is not consistent with the evidence. As previously explained, that evidence shows that [Plaintiff] is not as limited interacting with others, completing simple work activities, remaining on task, concentrating, sustaining a routine, completing a workday, adapting to changes, working at an appropriate pace, or making decisions as Dr. Bleecher finds him to be. Moreover, there is no objective evidence suggesting that he has trouble managing his symptoms, initiating and completing tasks he knows how to perform, or making plans, and his ability to complete daily tasks, like light household chores, gardening, and preparing simple meals, suggests that he has no limitations in these areas. In addition, Dr. Bleecher supports her opinion with an explanation,

11

noting that [Plaintiff] requests repetition of instructions, often writes down information, is easily overwhelmed, and has trouble making decisions. However, this conflicts with her treatment notes, which aside from the day she completed the questionnaire, routinely fail to document abnormalities in his mental status, including his attention, concentration, or memory. This opinion is not consistent with the evidence or well supported by Dr. Bleecher's own observations; thus, the undersigned does not find it persuasive.

(R. at 29-30.)

In challenging the ALJ's rejection of Dr. Bleecher's opinion evidence, Plaintiff first asserts that the ALJ failed to include a narrative discussion surrounding his determination that Dr. Bleecher's opinion was unpersuasive. (Pl.'s Mem. at 15-16.) The Court finds otherwise. The ALJ fashioned a sufficient narrative for the Court to complete a proper analysis and meaningful judicial review. The ALJ stated that "*as previously explained*, that evidence shows that [Plaintiff] is not as limited [in] interacting with others, completing simple work activities, remaining on task, concentrating, sustaining a routine, completing a workday, adapting to changes, working at an appropriate pace, or making decisions as Dr. Bleecher finds him to be." (R. at 29 (emphasis added).) The ALJ's decision previously found moderate limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing for oneself. (R. at 22-23.) As described *supra* in Part III, the ALJ supported his findings with a discussion of the record evidence.

Specifically, examination notes contained only rare instances of mild memory deficits and more often documented none. (R. at 22.) They often documented disturbances in mood and affect but did not indicate specific difficulties interacting with others. (R. at 22.) Moreover, the record showed that Plaintiff could prepare simple meals, ride a motorcycle, handle his own medical care, and watch and understand television shows. (R. at 22.) These activities suggest

that Plaintiff has the ability to learn, recall, and use information and the ability to maintain some

degree of concentration, persist at tasks, and complete tasks in a timely manner.  (R. at 22-23.)

Evidence also showed that Plaintiff talked to his friends and family regularly, participated in

group biker events, visited an amusement park, and attended a music festival, all activities which

required Plaintiff to demonstrate appropriate social skills.  (R. at 22.)

> In analyzing the medical opinions regarding mental impairments, the ALJ again noted:
>
> [P]roviders do not describe abnormalities in [Plaintiff's] cognitive functioning, and he is able to prepare simple meals, ride a motorcycle, do a few light chores around the house, and manage his own medical care.  These activities all require him to follow instructions, remain on task, work at an appropriate pace, and sustain some degree of concentration and attention.  This implies…that he can perform simple, routine, tasks and concentrate on those tasks or periods of two hours before requiring a break….[Plaintiff] has consistently stated that he is uncomfortable around others and avoids social settings…. [but] he is able to talk and text with his family regularly, go out to eat rarely, and attend 12-step meetings, and he has told providers that he navigated a biker meeting, an amusement park, and a music festival without substantial anxiety.

(R. at 28 (internal record citations omitted).)  The ALJ also cited evidence showing that Plaintiff

"can sustain an ordinary routine that involves minimal changes or adaptations to usual work

duties."  (R. at 28.)  Thus, the ALJ's decision properly explained his findings regarding Dr.

Bleecher's opinion, and its references to and incorporation of prior explanations within the

decision do not detract from the same.[4]

Second, Plaintiff contends that the ALJ improperly analyzed mental health treatment

based on one day of treatment notes, and that the treatment notes from the day of the

---

[4] In his Reply Brief (ECF No. 12), Plaintiff asserts that Defendant "does not address that the ALJ never engaged in a proper consistency analysis" argument and therefore "waived this argument." (Reply Brief at 3-4.)  The Court finds that Defendant sufficiently responded to this argument. Indeed, Defendant provides a definition of "consistency" in footnote 4 and outlines how other medical evidence in the file was inconsistent with Dr. Bleecher's findings, including in attention, concentration, and memory.  (Def.'s Mem. at 16-17 (arguing that "treatment notes consistently fail to document abnormalities in Plaintiff's mental status, including areas of attention, concentration, and memory" (citing R. 29-30)).)

questionnaire, and other treatment days, support Dr. Bleecher's conclusions. (Pl.'s Mem. at 16.) The Court disagrees. The ALJ did not focus on one day of Dr. Bleecher's treatment notes. Rather, the ALJ clearly stated that Dr. Bleecher's conclusion that Plaintiff "requests repetition of instructions, often writes down information, is easily overwhelmed, and has trouble making decisions" conflicts with her treatment notes "*aside from the day she completed this questionnaire*." (R. at 29 (emphasis added).) Plaintiff argues that the ALJ's choice to "focus on one day in mental health treatment" is "problematic." (Pl.'s Mem. at 16.) The Court does not read the ALJ's opinion as doing so. Rather, the ALJ focuses on the treatment notes as a whole in weighing Dr. Bleecher's opinion. (R. at 29.)

Third, the Court disagrees with Plaintiff's contention that the ALJ cherrypicked, misstated, or ignored record evidence of mental abnormalities. (Pl.'s Mem. at 16-17.) The ALJ conceded that the treatment notes from the day of the questionnaire noted mental abnormalities. And while Dr. Bleecher's treatment notes elsewhere reported minor mental abnormalities (i.e. fidgeting and spontaneous speech), they also documented an intact short- and long-term memory, an ability to recall, goal-directed thoughts, alertness, and intact concentration and attention. (R. at 532, 546, 579-80.) Some reports did not include fidgeting. (R. at 612, 654.) At least one report included the dictation of "I'm hanging in there" as a response to his mood. (R. at 654.) The record evidence, therefore, does not clearly lean one way or the other. Because the ALJ explained his basis for finding the opinion evidence of Dr. Bleecher to be unpersuasive, he complied with the regulations. It is not the Court's position to reweigh conflicting evidence. *See Hancock*, 667 F.3d at 472. Thus, the Court finds that the ALJ applied proper legal standards in evaluating Dr. Bleecher's opinion and that this determination is substantially supported by the evidence.

**C. The ALJ Applied Correct Legal Standards in Evaluating Counselor Bardenheier's Opinion and the ALJ's Determinations Are Substantially Supported by the Evidence**

*1.    Counselor Bardenheier's Medical Opinion*

Counselor Bardenheier, one of Plaintiff's treatment providers, completed a mental capacity questionnaire on September 12, 2022.  (R. at 638-40.)  Therein, Counselor Bardenheier listed Plaintiff's diagnoses as opioid use disorder (severe, in remission), ADHD, PTSD, generalized anxiety disorder, and major depressive disorder.  (R. at 638.)

Similar to Dr. Bleecher's opinion, in assessing Plaintiff's limitations in understanding, remembering or applying information, Counselor Bardenheier opined that Plaintiff had marked limitations in the ability to follow one- or two-step oral instructions to carry out a task and the ability to sequence multi-step activities.  (R. at 638.)  She cited the following about Plaintiff as support for her assessment: "[n]otable difficulty with memory regarding instructions; regularly requires asking several times to repeat instructions[;] particular to med changes, treatment plan goals/obj., loses provided handouts/papers."  (R. at 638.)

In rating limitations for concentration, persistence, or maintaining pace, Counselor Bardenheier assessed Plaintiff as having marked limitations in the following skills: the ability to initiate and perform a task that he knows how to do, the ability to ignore or avoid distractions while working, the ability to sustain an ordinary routine and regular attendance at work, and the ability to work a full day without needing more than the allotted number and length of breaks during the day.  (R. at 639.)  This again mirrored the opinion of Dr. Bleecher.  Counselor Bardenheier, however, opined that Plaintiff had an extremely restricted ability to work close to or with others without interrupting or distracting them (R. at 639), whereas Dr. Bleecher marked this ability as "unknown." (R. at 634).  In supporting this assessment, Counselor Bardenheier

wrote: "significant hyperactivity, easily distracted.  Difficulty attending in appointment – often interrupts."  (R. at 639.)

Regarding limitations for adapting or managing oneself, Counselor Bardenheier noted that Plaintiff had marked limitations in the ability to adapt to changes and make plans independently of others, and extreme limitations in the ability to manage psychologically-based symptoms.  (R. at 634.)  These findings again duplicate Dr. Bleecher's opinion.  For support, Counselor Bardenheier explained that Plaintiff's "[f]requent panic/anxiety attacks[] impairs decision making ability" and that Plaintiff "uses avoidance to cope" and has "[d]ifficulty w[ith] activities of daily living routine."  (R. at 639.)

Lastly, for limitations relating to interacting with others, Counselor Bardenheier noted a marked ability to handle conflicts with others, whereas Dr. Bleecher found this ability to be mild.  (R. at 635, 640.)  Counselor Bardenheier stated as support for this assessment: "N/A overall; except [Plaintiff] is often conflict avoidant to impairmen[ts] from elevated stress/emotional triggers.  Hyperactivity/interruptions present here."  (R. at 640.)

### 2.    *The ALJ's Evaluation of Counselor Bardenheier's Opinion*

The ALJ satisfied the regulations when he found Counselor Bardenheier's opinion not persuasive.    After summarizing Counselor Bardenheier's findings, the ALJ identified discrepancies between her findings and other medical evidence on file.  (R. at 30.)  Specifically, the ALJ referenced the prior analysis of Dr. Bleecher's opinion, which the ALJ found not persuasive and which largely mirrored that of Counselor Bardenheier's.  (R. at 30.)  The ALJ found Counselor Bardenheier's opinion not consistent with the evidence for the same reasons. (R. at 30.)  In addition, the ALJ found Counselor Bardenheier's opinion inconsistent with her

own examination notes "which describe few abnormalities in [Plaintiff's] mental status." (R. at 30.)

Plaintiff accuses the ALJ of failing to conduct a proper consistency analysis, and claims that Counselor Bardenheier's notes were not only referenced by Dr. Bleecher but were also highly probative of a mental impairment. (Pl.'s Mem. at 17.) Plaintiff lists multiple appointment notes that point to Plaintiff's depressed mood, suicidal ideations, and feelings of hopelessness. (Pl.'s Mem. at 17-18.) These notes, however, also contain assessments that support less severe limitations associated with a mental impairment. For example, on June 24, 2022, Counselor Bardenheier reported, among other things, that Plaintiff's mood was irritable and sad/depressed and reported hopeless and helpless thoughts, but also reported that Plaintiff had a goal-directed, organized, and logical thought process. (R. at 690.) On July 8, 2022, Counselor Bardenheier reported the same, with an added thought content of future oriented but added affect of sad/depressed. (R. at 687.) On July 20, 2022, Counselor Bardenheier reported the same, with added affects of fearful/anxious and embarrassment/shame. (R. at 684.) On September 26, 2022, Counselor Bardenheier reported that Plaintiff is "doing well overall, mood stable…. [Plaintiff] appears brighter today, improved affect and mood…. [Plaintiff] states this is the first day he has felt mostly good after several days crying [following a familial loss]." (R. at 672.) His progress was marked as much improved since the last session, and he was noted as cooperative, but with a sad/depressed mood and affect and a goal directed and organized thought process. (R. at 673.) On November 11, 2022, Counselor Bardenheier reported that Plaintiff was "doing well overall, mood stable…. Mood appears improved overall" and she noted that he seemed slightly improved since the last session. (R. at 700-02.) She also added that he was

sad/depressed, but goal directed and organized, with hopeless but future oriented thoughts.  (R. at 702.)

The evidence, therefore, does not clearly tip the scale in one direction.  The ALJ gave valid reasons for finding the opinion evidence of Counselor Bardenheier unpersuasive and therefore complied with applicable regulations.  It is beyond this Court's purview to reweigh conflicting evidence.  *See Hancock*, 667 F.3d at 472.  Thus, the Court finds that the ALJ applied proper legal standards in evaluating Counselor Bardenheier's opinion and that this determination is substantially supported by the evidence.

### D. The ALJ Applied Correct Legal Standards in Evaluating Dr. Johnson's Opinion and the ALJ's Determinations Are Substantially Supported by the Evidence

*1.    Dr. Johnson's Medical Opinion*

Dr. Johnson completed a psychological report for Plaintiff on May 22, 2022.  Dr. Johnson noted that Plaintiff had a sad and melancholic mood during the examination but had fair insight and judgment and had normal speech, eye contact, and thought processes.  (R. at 455.)  She noted that Plaintiff had marked limitations in the ability to: use reason and judgment to make work related decisions; interact adequately with supervisors and coworkers in public; sustain concentration and perform a task at a consistent pace; sustain ordinary routine and regular attendance at work; regulate emotions, control behavior, and maintain well-being; and function in full-time employment within a competitive working environment.  (R. at 457-58.)

*2.    The ALJ's Evaluation of Dr. Johnson's Opinion*

The ALJ satisfied the regulations when he found Dr. Johnson's opinion not persuasive. After summarizing Dr. Johnson's findings, the ALJ explained:

> This opinion is not consistent with the evidence, which establishes that [Plaintiff] has a greater capacity for performing simple work activities, interacting with others, sustaining a routine, concentrating, functioning in a fulltime, competitive

> environment, and working at an appropriate pace than Dr. Johnson finds for the
> reasons explained above.  In addition, [Plaintiff] has not demonstrated objective
> difficulties making decisions, regulating his emotions, controlling his behavior, or
> maintaining his well-being or personal hygiene, and he should be able to complete
> these activities without restriction.

(R. at 29.)  The ALJ also characterized Dr. Johnson's opinion as "quite vague" because "it d[id]

not discuss what [Plaintiff] remains able to do despite his impairments."  (R. at 29.)  Lastly, the

ALJ noted that Dr. Johnson's opinion was not supported by her own examination notes, which

document "just a few, largely mild, abnormalities in [Plaintiff's] mental status."  (R. at 29.)

Therefore, the ALJ did not find Dr. Johnson's opinion persuasive.

In challenging the ALJ's decision, Plaintiff first states that the opinions of Dr. Bleecher

and Counselor Bardenheier are "highly consistent" with Dr. Johnson's opinion, yet the ALJ

failed to acknowledge this consistency.  (Pl.'s Mem. at 18.)   The ALJ described Counselor

Bardenheier's opinion "including the explanation used to support it, [a]s nearly identical to that

provided by Dr. Bleecher" and found both opinions to be unpersuasive for the same reasons.  (R.

at 30.)   As Plaintiff notes, the ALJ's decision does not characterize Dr. Johnson's opinion as

consistent with that of Dr. Bleecher and Counselor Bardenheier's.  But the Court finds no error

in that omission.

The Court disagrees with Plaintiff's characterization of Dr. Johnson's opinion as "highly

consistent" with the other two.  For example, Dr. Johnson found moderate limitations in

Plaintiff's ability to understand, remember, or apply simple or complex directions and

instructions (R. at 457), whereas Dr. Bleecher and Counselor Bardenheier's opinions found

marked limitations in similar categories. (R. at 633, 638.)  Dr. Johnson found marked limitations

in ability to use reason and judgment to make work-related decisions (R. at 457), whereas Dr.

Bleecher and Counselor Bardenheier found moderate limitations in that area. (R. at 633, 638.)

As a final example, Dr. Johnson described Plaintiff as having marked limitations for his ability to

interact with supervisors and coworkers (R. at 457), whereas Dr. Bleecher and Counselor Bardenheier found no limitations in four categories relating to interacting with others, and then mild (Dr. Bleecher's opinion) or marked (Counselor Bardenheier's opinion) limitations for the final category of ability to handle conflicts with others. (R. at 635, 640.)   Given these differences, the ALJ did not err in failing to characterize these three opinions as "highly consistent."

Plaintiff next contends that the ALJ's opinion lacks sufficient explanation and support because it simply references "the reasons explained above." (Pl.'s Mem. at 18.) Plaintiff argues that the Court "should not have to scour the ALJ decision to find his reasoning." (Pl.'s Mem. at 18 (citing *Candace W. v. Kijakazi*, 2022 WL 521967, at *3 (D. Md. Feb. 22, 2022)).)   Far from requiring the Court to scour the record evidence for support, the Court finds that the ALJ identified which evidence conflicted with Dr. Johnson's findings and provided a sufficient narrative to allow for a meaningful judicial review. (R. at 29.)   Specifically, the ALJ noted that Dr. Johnson's examination report documented only a few abnormalities in Plaintiff's mental status. (R. at 29.)   For example, on the day of Dr. Johnson's examination, Plaintiff "described symptoms, including trouble focusing and remembering information, nightmares, and flashbacks.   On examination, he was sad and melancholy with fair insight and judgment.   His attention, concentration, and memory were mildly impaired, but he successfully completed a variety of tasks designed to assess his functioning in these areas." (R. at 25.)   Indeed, Plaintiff was able to remember and repeat a variety of words and numbers in the session. (R. at 455-56.) Once again, the Court is not tasked with reweighing conflicting evidence. *Hancock*, 667 F.3d at 472.   The Court finds the ALJ's provided analysis to be sufficient.

Plaintiff also challenges the ALJ's description of Dr. Johnson's opinion as "quite vague." (*See* Pl.'s Mem. at 19.) The Fourth Circuit has held that an ALJ must discuss what aspects of an opinion are vague, and here, the ALJ did just that. *See Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018); *see also Williams v. Saul*, 2019 WL 3729016, at *13 (E.D. Va. July 22, 2019) (holding that the ALJ properly explained the "vagueness" of the medical opinion by outlining its failure to define certain terms). The ALJ stated that "this opinion is quite vague, and it does not discuss what [Plaintiff] remains able to do despite his impairments." (R. at 29.) The Court notes that in other mental capacity opinions, like those of Dr. Bleecher and Counselor Bardenheier, which the ALJ did not find vague, the treatment providers indicated a degree of limitation in 22 areas and had the opportunity to describe medical or clinical findings in support of the selected limitations. (R. at 633-35, 638-40.) Dr. Johnson's report on the other hand assessed functioning in nine broader areas, including the "[a]bility to function in full-time employment within a competitive working environment." (R. at 457-48.) The ALJ's explanation for why he found the medical opinion vague proves legally sufficient.

Thus, the Court finds that the ALJ applied proper legal standards in evaluating Dr. Johnson's opinion and that this determination is substantially supported by the evidence.

### E. The ALJ Applied Correct Legal Standards in Evaluating Drs. Luck, Leizer, and Blusiewicz's Opinions and the ALJ's Determinations Are Substantially Supported by the Evidence

#### 1. Drs. Luck, Leizer, and Blusiewicz's Medical Opinions

Dr. Luck, a state agency reviewing psychologist, completed a mental residual functional capacity form for Plaintiff on May 24, 2022. He indicated that Plaintiff: (1) could "recall short and simple instructions, but would have some difficulty with recalling and understanding complex or detailed information;" (2) should be able to "sustain an ordinary routine, with

minimal changes or adaptations to [his] job duties;" (3) should be able to "maintain attendance and punctuality with only 1-2 problems per month;" and (4) would "do best in a setting with only a few co-workers in a well spaced location" due to his anxiety and mood disorder.  (R. at 114.)

Dr. Leizer, a state agency reviewing psychologist, completed a mental residual functional capacity form for Plaintiff on July 5, 2022.  He reiterated the findings of Dr. Luck, but notably found that Plaintiff had no understanding and memory limitations.  (R. at 126.)  Dr. Blusiewicz, another state agency reviewing psychologist, affirmed this opinion on July 11, 2022.  (R. at 627.)

### 2.     The ALJ's Evaluation of Drs. Luck, Leizer, and Blusiewicz's Opinions

The ALJ satisfied the regulations when he found Drs. Luck, Leizer, and Blusiewicz's opinions somewhat persuasive.  After summarizing these medical opinions, the ALJ found them "partially consistent with the evidence," followed by a review of that evidence.  (R. at 28.) Specifically, the ALJ discussed Plaintiff's diagnoses, limitations supported by the examination notes, and various activities that Plaintiff could complete based on the record.  (R. at 28.)  Those activities included preparing simple meals, riding a motorcycle, doing light chores around the house, managing his own medical care, regularly talking and texting with his family, going out to eat rarely, attending 12-step meetings, and navigating a biker meeting, an amusement park, and a music festival without substantial anxiety.  (R. at 28.)  The ALJ then found that the doctors "support[ed] their opinions with explanations based on their reviews" of the evidence but noted that "additional evidence has been received since they conducted these reviews."  (R. at 29.) Thus, the ALJ found, that those opinions were "just somewhat persuasive."  (R. at 29.)

Plaintiff argues that the ALJ erred by failing to explain why the RFC allows frequent changes or adaptations to job duties instead of minimal changes or adaptations as suggested by Drs. Luck, Leizer, and Blusiewicz.  (Pl.'s Mem. at 20.)  The Court finds otherwise.  While

acknowledging that Plaintiff "has stated that he has trouble handling stress and adjusting to changes," the ALJ's decision noted that "[e]xaminations have not revealed a specific increase in mental status abnormalities during periods of increased stress or change, suggesting that he is somewhat less limited in tolerating changes than as Dr. Luck, Dr. Leizer, and Dr. Blusiewicz indicate."  (R. at 28 (internal record citations omitted).)  Indeed, the ALJ found that "providers generally d[id] not observe an objective increase in mental status abnormalities" due to various stressors, and that Plaintiff "typically does not require any medication changes to help him adapt." (R. at 23.)  Thus, the ALJ concluded, Plaintiff is "capable of adjusting to simple changes with little difficulty."  (R. at 23.)  The ALJ sufficiently explained why he did not include a limitation regarding minimal changes or adaptations to job duties in the RFC.  Plaintiff correctly states that SSR 96-8p requires the ALJ to explain why a medical opinion was not adopted if it conflicts with the adopted RFC.  (Pl.'s Mem. at 20.)  Here, the ALJ sufficiently explained why he did not adopt this portion of the medical opinions - first, because examination findings did not show an increase in mental status abnormalities during periods of increased stress or change, and second, because their opinions issued before the receipt of additional evidence which was only partially consistent with their conclusions.[5]

Plaintiff next contends that the ALJ failed to explain why the RFC does not provide for one to two problems per month relating to work attendance or punctuality.  (Pl.'s Mem. at 20-21.)  The pertinent portion of the ALJ's decision provides: "As for the conclusion of Dr. Luck, Dr. Leizer, and Dr. Blusiewicz that [Plaintiff] will be absent from work once or twice a month,

---

[5]  In his Reply Brief (ECF No. 12), Plaintiff asserts that Defendant "does not address Plaintiff's argument [that] the ALJ failed to reconcile the opinion [of non-examining State psychological opinions] without explanation, and therefore has waived it."  (Reply Brief at 1.)  The Court disagrees and finds that Defendant sufficiently responded to Plaintiff's arguments surrounding Drs. Luck, Leizer, and Blusiewicz.  (*See* Def.'s Mem. at 19.)

there is no evidence that he has trouble attending medical appointments or adhering to a routine. This implies that this restriction is not necessary." (R. at 28.) Plaintiff argues that "it is unclear what routine Plaintiff" can adhere to as he does not work and spends days sitting in bed. (Pl.'s Mem. at 21.) Plaintiff also contends that his "ability to attend the occasional 1-hour doctor's appointment is not the same as the ability to attend work 8 hours a day 5 days per week." (*Id.*) The ALJ, however, found Plaintiff able to care for his personal needs, manage his own medical care, prepare simple meals, and do some light chores around the house. (R. at 28.) The ALJ's decision notes that Plaintiff told providers he is "quite active at home. For instance, in June 2022, he indicated that he enjoys playing the guitar, riding his motorcycle, and gardening with his wife, and that he had recently been planting a vegetable garden and doing side work painting houses." (R. at 26.) Moreover, Dr. Luck's opinion, which the ALJ found somewhat persuasive, stated that Plaintiff could sustain an ordinary routine. (R. at 28, 114.) Opinions indicating that Plaintiff has issues maintaining a routine (Dr. Bleecher, Counselor Bardenheier, and Dr. Johnson) were all found to be unpersuasive. To the extent Plaintiff points to some record evidence that weighs against the ALJ's decision, the Court is not tasked with reweighing the evidence. *See Hancock*, 667 F.3d at 472. Therefore, the Court declines to disturb the ALJ's findings of fact on this point.

## V.     CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 8) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 11) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Henry E. Hudson and to all counsel of record.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

_____ /s/
Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: December 21, 2023